909 F.2d 1484
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Isabel ROMAN, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 89-4017.
 United States Court of Appeals, Sixth Circuit.
 Aug. 14, 1990.
 
 On Appeal from the United States District Court for the Northern District of Ohio, 87-01818, Bartuuek.
 N.D. Ohio
 REVERSED AND REMANDED.
 Before KENNEDY and MILBURN, Circuit Judges, and HERMAN J. WEBER, District Judge.*
 PER CURIAM:
 
 
 1
 Plaintiff-appellant Isabel Roman was denied disability benefits by the Social Security Administration. An Administrative Law Judge (ALJ) found that Roman suffered from spine disorders and associated pain but concluded these spine disorders did not meet or equal an impairment listed in the Social Security regulations and did not otherwise prevent her from returning to her past work as a seamstress. After the Appeals Council adopted this decision as the final decision of the Secretary, Roman sought review in the District Court. By agreement of the parties, the matter was referred to a magistrate for disposition. The magistrate concluded that the Secretary's decision was supported by substantial evidence. On appeal, Roman continues to assert that the Secretary's decision to deny benefits was not supported by substantial evidence. In the alternative, Roman seeks to have the case remanded to the Secretary so that the record can be reopened and additional evidence submitted. For the reasons stated below, we conclude that the Secretary's decision to deny benefits was not supported by substantial evidence and REMAND the case to the District Court with instructions to remand the case to the Secretary for an award of benefits.
 
 I. Background
 
 2
 Roman filed an application for disability insurance benefits on May 16, 1986 alleging that she had been disabled since February 14, 1978 due to back problems. She has not worked since that time.[1] Accordingly, in order to qualify for benefits, she must demonstrate that she had a disability that prevented her from working on or prior to June 30, 1983, the last date of her insurance coverage. Roman was born on July 12, 1935 in Puerto Rico. She attended school there only through the third grade. Since coming to the United States she has mastered very little English. Although she claims to understand English when it is spoken to her, it is not clear that this is true. She speaks only Spanish.
 
 
 3
 Roman first experienced back pain while lifting a heavy object at work in 1976. After two weeks of home treatment, she returned to work until her condition worsened in February 1978. On February 14, 1978, Roman was hospitalized after complaining of severe lower back pain. Hospital records indicate that Roman lacked a left ankle reflex and had a limited range of motion in her legs and back. X-rays showed she had spondylolisthesis (a partial, forward dislocation of a lower lumbar vertebra with consequent pelvic deformity) at the L5-S1 position (between her last lumbar vertebra and sacrum). The examining physician at the hospital opined that this condition was probably caused by a congenital defect in the joint structure aggravated by the earlier trauma. The final diagnosis was a back sprain and spondylolisthesis. After eight days of treatment with pain medication and heat, she was released in satisfactory condition. No long term prognosis was given.
 
 
 4
 Roman never returned to work after her release. On March 5, 1981, Roman was again admitted to the hospital complaining of back and leg pain. X-rays and a lumbar myelogram again showed that she was suffering from grade I spondylolisthesis between her lumbar vertebra and sacrum.[2] Joint space narrowing was also detected. Although her doctors had earlier suspected Roman suffered from a herniated disk, the myelogram revealed that this was not the case. Joint App. at 76. Roman's treating neurologist, Dr. Alexander Ling, and family physician, Dr. Juan Gonzalez, recommended surgery to relieve the pain. Roman declined to undergo surgery and was placed on muscle relaxants and pain medication.
 
 
 5
 On November 10, 1981, Roman was examined by a physician for the Ohio Industrial Commission. The doctor essentially reached the same conclusion as Dr. Gonzalez: Grade I spondylolisthesis between the last lumbar vertebra and narrowing at L5. Additionally, the doctor noted that Roman had weakness in her left foot and a loss of sensation in her left leg. He concluded from x-rays that the narrowing of the joint space at L5-S1 was severe. His final opinion was that Roman
 
 
 6
 has a rather high degree of impairment because of the congenital deformity of the lumbosacral area. At this time, the claimant has evidence of nerve root compression at L5, S1. Some of this impairment is secondary to the incident allowed in this claim, however, the congenital back deformity was present before the claimant sustained the injury at work. Since only a portion of the total impairment is secondary to the condition allowed in this claim, I would rate the claimants [sic] impairment as a low-moderate of 35% permanent partial.
 
 
 7
 Joint App. at 113.
 
 
 8
 Throughout 1981, 1982, and 1983, Roman continued to see Dr. Gonzalez for treatment of her pain. His diagnosis remained essentially unchanged. He noted that she complained of weakness and numbness in her left leg. He also treated her for a bruised knee that resulted from a fall in June 1981. Roman stated that the weakness in her legs caused the fall. Dr. Gonzalez also completed forms for the Ohio Bureau of Workers' Compensation so that Roman could receive workers' compensation payments. The record includes reports he made to the Bureau on June 23, 1981, February 12, 1982, April 5, 1983, and May 17, 1983. The forms on which his reports were made include a space for listing the date on which the claimant is expected to be recovered sufficiently to return to work. In the first and second of these reports, Dr. Gonzalez responded that Roman would "never" be able to resume her past work or even light exertional duties. In the remarks section, Dr. Gonzalez wrote that it was his professional opinion that Roman was permanently and totally disabled. Joint App. at 118, 122.[3]
 
 
 9
 Unlike the first form contained in the record, the later forms did list a date in the future on which Roman might be able to return to work. The date for return to employment was qualified however. On the later two forms, Dr. Gonzalez typed near the date of return, "It is my professional opinion that she is permanently totally disabled." On the April 5, 1983 form, Dr. Gonzalez also typed under the date of return "No sooner than if at all." Joint App. at 120, 121.
 
 
 10
 Dr. Gonzalez retired from practice in late 1983 and died shortly before Roman's claim was heard before the ALJ. Dr. Nelida Enrique took over Dr. Gonzalez' practice after his retirement. She also submitted one workers' compensation form for Roman. On the form, dated February 3, 1984, she stated that Roman would not be able to return to work before the end of the year, if at all, and opined that Roman was "permanently totally disabled." In a letter to Roman's attorney, Dr. Enrique stated that she had seen Roman several times in late 1983 and 1984. She diagnosed the condition as spondylolysis, grade I spondylolisthesis, and lumbar radiculopathy. She stated that her advice to Roman in 1984 had been to continue her medication. Joint App. at 117.
 
 
 11
 In 1985 and 1986, Roman was seen sporadically on an outpatient basis at the Cuyahoga County Hospital. She was diagnosed on October 4, 1985 as having grade II spondylolisthesis--an apparent worsening of her prior condition. Joint App. at 94. On several occasions the doctors there advised her to lose weight, follow a prescribed exercise program for her back, use hot packs, and attend classes that would teach her how to cope with and treat her back problem. Roman did not lose weight and had difficulty with the class--which she only attended once--because of a language barrier. In February 1986, a note was made in Roman's chart that she would not be considered a candidate for surgery until she was able to lose weight and followed her exercise program.
 
 
 12
 Finally, in June and July 1986, Roman's medical records were examined by two of the Secretary's consultative physicians, Drs. Myung Cho and Lynne Jones. Their diagnosis of the cause of her back pain concurred with that of the prior doctors' Roman had seen. Nevertheless, both concluded that Roman was capable of performing medium work, occasionally lifting up to 50 pounds, frequently lifting up to 25 pounds, and could stand or sit about six hours each during the course of an eight hour day. Both believed that Roman could engage in most activities requiring a full range of motion, with limitations placed only on her ability to stoop and crouch.
 
 
 13
 At the administrative hearing, Roman testified that her activities were limited. She stated that she can only sit down about one-half hour at a time before she must stand. Joint App. at 25. In fact, Roman was unable to sit through the entire administrative proceeding. Joint App. at 33. Roman also testified that she was afraid to walk because she feared falling, Joint App. at 24, and was unable to bend over or even touch her knees because of the pain, Joint App. at 25. Roman apparently went to church two or three times a week when others picked her up, did very little housework (the laundry and most other work were performed by her daughter), cooked occasionally if it was only for her husband and herself, and spent most of her days reading the Bible in Spanish. Joint App. at 25-27.
 
 
 14
 Some of the restrictions Roman described would prevent her from performing her past work as she described it. Roman testified that she had to sit down most of the day while she was working at her prior job as a seamstress. Joint App. at 29. In a prior form submitted to the Secretary, Roman elaborated on the requirements of the particular job she performed, stating that she sat about seven hours of the day, had to bend constantly, and frequently carried weights of five to six pounds. Joint App. at 66.
 
 
 15
 Evaluating this evidence, the ALJ concluded that "[i]n view of the claimant's testimony as to her activities as well as the minimal clinical findings," Roman's "allegations of pain and limitations of such severity as to preclude light work activities through June of 1983 are not credible." Joint App. at 11. Accordingly, the ALJ found the medical impairments did not meet or equal an impairment or combination of impairments listed in the regulations. Further, he found that Roman could return to her past work as a seamstress. Joint App. at 12. The magistrate found these conclusions supported by the evidence and declined to enter relief. This appeal followed.
 
 II. Discussion
 
 16
 Roman raises three issues on appeal. First, she claims that the ALJ was clearly erroneous in finding that her impairments did not meet those found in 20 C.F.R. Part 404, Subpart P, App. 1, Part A, listing 1.05(C). Second, she claims that even if her condition does not meet those in the listing, the ALJ was clearly erroneous in not finding that the pain her condition produces is disabling. Finally, and in the alternative, Roman seeks to have the case remanded so that new evidence can be submitted.
 
 
 17
 The ALJ was not clearly erroneous in concluding that Roman's condition did not meet or equal listing 1.05(C). Listing 1.05(C) provides:
 
 
 18
 Other vertebrogenic disorders (e.g., herniated nucleus puplosus, spinal stenosis) with the following persisting for at least three months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
 
 
 19
 1. Pain, muscle spasm, and significant limitation of motion in the spine; and
 
 
 20
 2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.
 
 
 21
 The Secretary argues that Roman has not produced sufficient evidence to prove that she suffers from muscle spasms, significant limitation of spinal motion, and significant motor loss to the degree required to meet the listing. We agree. Although Roman complains of extreme weakness in her legs and loss of motion, the evidence before the ALJ, with the exception of Roman's testimony, does not support her assertions that either of these symptoms were of a severity equal to that contemplated by the listing. Although there are notations in the medical record of weakness in her left foot and one fall allegedly as the result of weakness in her legs, this alone would not prevent an ALJ from concluding that muscle weakness was both not severe and not likely to persist for three months. Similarly, while Roman complained of pain when moving her back, and some limitations of movement in her back and limbs are noted in the record, these also are not so overwhelming as to prevent the ALJ from concluding that Roman did not have significant limitations on her range of motion in her spine. Finally, although Dr. Gonzalez, Roman's treating physician, did make one note of muscle spasm and limitation of motion of the spine, Joint App. at 121, he did not elaborate or explain the basis of his conclusion as is required. See 20 C.F.R. Part 404, Subpart P, App. 1, Part A, listing 1.00(B) ("There must be a detailed description of the orthopedic and neurologic examination findings").
 
 
 22
 We believe that there was no substantial evidence to support the conclusion that Roman's pain was not disabling. The primary criteria for evaluating pain was set forth in Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir.1986), which requires proof of an underlying medical condition that could reasonably be expected to cause pain and either objective medical evidence to confirm the severity of the pain or the presence of a medical condition that can be expected to give rise to disabling pain. The Secretary concedes that Roman has a condition that could cause pain but argues that substantial evidence supports the ALJ's conclusion that there is no objective evidence proving Roman is actually suffering from disabling pain and also no evidence proving that grade I spondylolisthesis and spondylolysis of the type suffered by Roman would be expected to give rise to disabling pain.
 
 
 23
 To support her claim of disability, Roman relies primarily on workers' compensation reports prepared by her treating physicians. Most of these forms state that the physicians believed Roman was permanently disabled. The ALJ rejected these forms both because many contained a seeming contradiction in that they listed a date on which the doctor believed Roman would be able to return to work and because they were not supported by the necessary clinical findings.
 
 
 24
 Roman is correct that the ALJ should not have rejected the reports because they included a future date on which she could return to work. First, the date listed was usually at least three months in the future. Second, the doctors added additional language before or after the date which indicated that they did not believe Roman would ever return to work. Apparently, the doctors were merely following the instructions of the Ohio Bureau of Workers' Compensation to always list a possible future return date. The language on the top of the forms suggests this, as do other instruction forms of the Bureau. See Ohio Bureau of Workers' Compensation Form C-84, Joint App. at 122 ("Please give date claimant was (or will be) able to work, either actual or estimated. Expressions such as 'don't know', 'indefinite', 'can't estimate', or 'several weeks' are unsatisfactory and will delay payment to claimant."); Ohio Bureau of Workers' Compensation Form 13 (form letter sent to workers' compensation claimant on how form should be completed) ("There must be an estimated return to work date or the Bureau will not extend compensation. ( FN: In appropriate cases add here: "If the physician does not feel you will ever return to work, it is still important to place a date. The physician may state 'at the minimum one year.'... ) ") (emphasis in original). The only reasonable conclusion is that Roman's treating physicians believed she was totally, permanently disabled but listed a return to work date to meet state regulatory requirements.
 
 
 25
 Similarly, the ALJ erred in concluding that the forms do not state the basis for the doctor's findings of disability. The reports contain notations in the remarks section that refer to muscle spasms, limitation of movement and bending, and severe back pain radiating into both legs. The reports also refer to the earlier myelograms and x-ray studies performed by Dr. Gonzalez and other physicians to whom Dr. Gonzalez had referred Roman. Roman's inability to produce further explanation from Dr. Gonzalez is understandable since he retired prior to her filing of a claim and died before the hearing. Although the ALJ's frustration at having the treating physicians' reports submitted in the form of state workers' compensation forms is understandable, this alone does not serve as a basis for rejecting the treating physician's conclusion that Roman was suffering from severe back problems that produced disabling pain.
 
 
 26
 All of the medical evidence in the record supports the conclusion that a person with Roman's physical problems could suffer from disabling pain. Dr. Gonzalez, Roman's treating physician for a number of years, believed that Roman was in fact suffering from disabling pain. In light of this evidence, the ALJ's decision to reject Roman's allegations of pain appear suspect. The ALJ rejected Roman's complaints of disabling pain because of what he found to be the minimal nature of the clinical findings and because he believed that Roman's active schedule tended to undermine the credibility of her assertions. Further, the ALJ credited in part the testimony of the two consultants who opined that there were few restrictions on Roman's ability to lift weights, bend, and stand or sit for long periods. Minimal clinical findings are not enough to reject Roman's credibility if the findings support the presence of a condition that could cause disabling pain. A contrary conclusion would unfairly result in a denial of benefits to a broad spectrum of persons suffering from disabling pain. Moreover, Roman's activities were limited. She did little housework and only went to church when others drove her. She was afraid to walk because the weakness in her legs made her prone to falling. The conclusion that this constitutes an active schedule is clearly erroneous.
 
 
 27
 The record also does not provide support for the ALJ's assertion that Roman can do the bending, lifting, and constant sitting associated with her prior work as a seamstress without suffering disability pain. The Secretary's consultants concluded that Roman can perform these functions. Roman asserts that these opinions are not credible because they contradict her treating physicians' conclusions, because the conclusions are facially unreasonable, and because the consultants did not have all the evidence in the record before them. We agree. The consultants' conclusions that Roman could regularly lift 25 pounds, occasionally lift 50 pounds, and only had modest restrictions on bending directly contradict the clinical findings of Roman's treating physician. Further, they do not appear reasonable on their face. Although the ALJ found that Roman was capable of--and Roman's prior work in fact requires--far less lifting than the consultants concluded that Roman was capable of performing, absent the consultants' opinion there is no basis for this conclusion. Finally, the additional evidence submitted by Roman after the consultants' review was not considered by the consultants.
 
 
 28
 Since the ALJ did not have a reasonable basis for rejecting Roman's allegations of disabling pain and since Roman's treating physicians believe she was in fact suffering from such pain and from a condition that could cause that pain prior to her last date of coverage, we conclude that the Secretary erred in denying Roman disability benefits. Accordingly, the judgment of the District Court is REVERSED and the case is REMANDED with directions that the case be remanded to the Secretary for the award of benefits.
 
 
 
 *
 The Honorable Herman J. Weber, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 Roman received state workers' compensation benefits for most of this period. Her state benefits apparently ended before she filed for social security disability benefits
 
 
 [2]
 The record in this case does not indicate the relative severity of "grade I." 1A Courtroom Medicine Sec. 32.30 states that spondylolisthesis is rated in severity from grade I to grade V, with grade V being the most severe
 
 
 [3]
 The additional evidence proffered by Roman in her reply brief consists primarily of additional workers' compensation forms submitted by Dr. Gonzalez